DAVIS, Circuit Judge,
concurring:
I join the majority opinion in full. Our good colleague in dissent laments the possible consequences to an “innocent” litigant from his counsel’s unwise and misplaced strategic choice to litigate, ostrich-like, with his head in the sand.[1] But as the majority opinion fully explains, the agency theory of legal representation is long established. The majority opinion does no more than make explicit that which common sense and mature judgment make plain: lawyers have an obligation to their clients, to the profession, and to the court to pay attention. For practitioners in the legal profession, unlike those in some others, he who fails to pay attention may one day have to pay up.
If it is true that a little knowledge is a dangerous thing,[2] it is equally true that a little local knowledge is invaluable. As the dissent intimates, there are districts, divisions, and cities and counties in this circuit in which what happened in this case would be highly unlikely to happen. That is to say, in some places, lawyers talk to each other frequently, even lawyers on opposing sides of disputes. They discuss, for example, in advance, proposed or expected motions and other litigation events; they stay in contact with each other during the pendency of the case. Likewise, in some places, a district judge’s staff or a magistrate judge’s staff can be counted on to telephone a lawyer who has failed to file an opposition to a long-pending dispositive motion before the court rules on such a motion; in some other places, no such call can or should be expected from a chambers staff. In some places, a lawyer (with or without the client’s assent) might herself call an adversary to inquire as to the lack of an opposition to a dispositive motion. But none of these things are required or expected in any district or any court; local legal culture drives these practices.
*415 Thus, local knowledge, local practices, and local courtesies come in many varieties and arise from many sources.[3] In any event, this court’s responsibility is to announce principled decisions based on legally supported rules of general application. The majority opinion does that here and I join it fully.

. At oral argument, the panel questioned counsel vigorously as to how counsel could have taken no action to inform himself of the status of the case for several months after his computer problems had been remedied and the deadline for dispositive motions had passed. Counsel assured the court that the case was not neglected, that his office has “procedures in place” to monitor cases, and that he "specifically recalled” discussing this case with "staff” in his office, apparently not long after the office computers were returned in early August (shortly after the deadline for the filing of dispositive motions). Here was counsel’s candid but surprising explanation as to why, despite knowledge that during the computer malfunction the motion deadline had come and gone, he did nothing:
I was aware that the deadline had passed. I made the strategic decision not to contact defense counsel.... In hindsight that wasn’t the best decision but I thought it would be contrary to my client’s position to pick up the phone to call opposing counsel to alert them that he [sic] may have neglected to file a motion within the time period for filing [for] summary judgment.
Counsel further explained that "routine” monthly checking of the CM/ECF system simply was not a part of his practice. But a computer malfunction necessitating a virtual shut-down of a law office for four days can hardly be described as “routine.”

. "A little learning is a dangerous thing; drink deep, or taste not the Pierian spring: there shallow draughts intoxicate the brain, and drinking largely sobers us again.” Alexander Pope, An Essay on Criticism, 1709. But see Thomas Henry Huxley, On Elementary Instruction in Physiology (1877) ("The saying that a little knowledge is a dangerous thing is, to my mind, a very dangerous adage. If knowledge is real and genuine, I do not believe that it is other than a very valuable possession, however infinitesimal its quantity may be. Indeed, if a little knowledge is dangerous, where is the man who has so much as to be out of danger?”).

. Our dissenting colleague makes much of the fact that the district court "rescheduled” the trial of the case by (electronic) notice entered approximately one month after the summary judgment deadline:
[T]he Order of Denial apparently misapprehended the role of the district court in sustaining the erroneous impression that no dispositive motions had been filed. By rescheduling the trial after the deadline for Robinson’s summary judgment response had passed, the court may have created the impression that the matter was progressing apace to trial, when in fact Robinson was overdue in his response.
Dissenting Op. at 421 n. 11. Apart from the soundness of the inference drawn by the dissent, there may be more to the story than appears.
The Case Management Order entered in this case stated the following at p. 413:
TRIAL DATE: Trial is scheduled to commence WITH a jury during the first civil trial term beginning on or after DECEMBER 15, 2008. The Court will endeavor to set the date of the term of court in which this case will tried at least eight months in advance. The term "Trial Date” has been used throughout this Order to refer to the first day of the term in which this case is ultimately set for trial, that also being the date on which jury selection is scheduled to begin for this case.
I do not claim any special insight into the court’s practices in the Western District of North Carolina; local knowledge counts. Nevertheless, a plausible reading of the trial setting provision in the Case Management Order is that, as its plain language states, "the ultimate” trial dale was to be set for "the first civil trial term beginning on or after DECEMBER 15, 2008.” That seems to have been what the district court did in setting the trial for early February 2009.
At all events, many litigators will attest that when a district court reschedules a trial to a later date after the motions deadline, it is to give the court more time to consider a dispositive motion. Thus, contrary to the inference entertained by the dissent, the setting of the trial date in this case is in reality an additional reason counsel for Robinson should have taken a few moments in September 2008 to check the docket to learn what was going on in the case.